## UNITED STATES v. McCREARY.
### No. 8956.

Circuit Court of Appeals, Ninth Circuit.
June 30, 1939.

Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, Atty., Dept. of Justice, of Washington, D. C., and Carl C. Donaugh, U. S. Atty., J. Mason Dillard, Asst. U. S. Atty., and Gerald J. Meindl, Atty., Dept. of Justice, all of Portland, Or., for the United States.

Clifford G. Schneider and Allan A. Bynon, both of Portland, Or., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee, Carrol Tillman McCreary, brought this action against appellant, the United States, under § 19 of the World War Veterans' Act, 1924, as amended, 46 Stat. 992, 38 U.S.C.A. § 445, on a claim for disability benefits under a contract of war risk term insurance issued to appellee under Article IV (§§ 400–405) of the War Risk Insurance Act, 38 Stat. 711, as amend-

ed, 40 Stat. 409, 410. The contract was issued to appellee on April 1, 1918, and was in force on August 19, 1919, on which date appellee claims to have become permanently and totally disabled. There was a jury trial and a verdict and judgment for appellee. That judgment was reversed. United States v. McCreary, 9 Cir., 61 F.2d 804, 808. The case was remanded for retrial and was retried. The result was, as before, a verdict and judgment for appellee. Appellant seeks reversal.

At the retrial, appellee introduced evidence tending to establish the claimed disability. To refute this, appellant introduced the testimony of medical experts, one of whom was Dr. Charles George Rattner. Dr. Rattner's testimony was given by deposition taken in New York. He was not present at the trial. He testified that he had made a full and complete examination of appellee at the Veterans' Hospital, Portland, Oregon, on August 31, 1922, and had at that time made a report of his findings. He had, at the time of giving his deposition, no independent recollection of the examination, but, refreshing his memory from the report, Dr. Rattner testified that the findings were negative; that "there was no disability at all, and [appellee] was entirely well;" that appellee's only complaint was of gas on the stomach; that he was "quite anguished and nervous" when he came to the hospital, but that during his stay in the hospital the nervousness entirely disappeared; that the laboratory findings for gastro-intestinal observations were negative; and that, therefore, appellee was discharged as a patient without any disability.

In rebuttal, appellee, under questioning by his counsel, testified as follows:

"Q. Now one last proposition, Mr. McCreary. Dr. Rattner, of New York City, gave his deposition here. He said he found nothing the matter with you. Do you remember a time when Dr. Rattner attended you when you were in the Veterans' Hospital and told you there was something the matter with you? A. Yes, sir.

"Q. What did he tell you?"

Thereupon, appellant's counsel objected: "If your Honor please, we object to this as hearsay testimony. Any attempt to impeach the doctor should have been done at the time the doctor's deposition was taken. We object to it as hearsay and not a proper attempt to impeach." The objection was overruled, appellant excepted, and appellee answered:

"A. After I finished my general routine examination the doctor called me in his office and he says, 'Well, McCreary, we found out what is wrong with you.' I said, 'That is good, Doctor. What is it?' He said, 'Well, you will have to go to the surgery.' I said, 'That is all right, but,' I says, 'what is it?' He says, 'Well, you have got acute appendicitis.' And I looked at him. I says, 'Why, that is strange, Doctor.' And he says, 'What is strange about it?' I said, 'Well I had my appendix removed about a year ago, or a little over.' And then he told me, he says, 'Well, I have got it now.' He says, 'You have got postoperative adhesions.' "

The admission of this testimony over appellant's objection was duly excepted to and is assigned as error. The assignment is well taken. The testimony was designed and intended to impeach and discredit Dr. Rattner and, in the minds of the jury, doubtless had that effect. No foundation had been laid for the introduction of such testimony. Its admission was obviously improper and obviously prejudicial.

We might stop here, but, in view of a possible third trial, other assigned errors will be briefly noticed.

Appellee testified that in August, 1921, he went to work in a dairy; that his employer was one Wilcox; that Wilcox told appellee that appellee "couldn't carry on," meaning, evidently, that appellee was unable to work, and that appellee would have to quit. The statement that Wilcox told appellee that appellee "couldn't carry on" was hearsay and was objected to by appellant on that ground.

Appellee testified that he talked to Dr. A. E. Tamasie about vocational training in 1925, but that Dr. Tamasie claimed that appellee was not "feasible." Appellee further testified: "Well, he said if I got the training I would be expected to make my livelihood from that after I finished my training, but he didn't think that I could carry on, that I hadn't been able to in the past, and he could see no reason why I could in the future." This was hearsay and was objected to by appellant on that ground.

Appellee introduced evidence tending to show that he was suffering from a duodenal ulcer. Thereafter, appellee testified that Dr. H. M. Read, one of several physicians who had examined appellee, told appellee that duodenal ulcers never heal.

This was hearsay and was objected to by appellant on that ground.

Appellee testified that he was treated in the Veterans' Hospital for amebiasis. This was either hearsay or opinion testimony on a subject concerning which appellee was not qualified to express an opinion. It was objected to by appellant on both grounds.

Appellee's witness, Helen Lyons, an office technician (not a physician or nurse) employed by Dr. Quentin Tucker in 1929, testified that appellee came to Dr. Tucker several times. Asked what appellee's complaints were, the witness answered: "Well, his complaint, the one that worried the doctor so very much, was the condition of his heart." This was hearsay and was objected to by appellant on that ground.

Dr. Herbert H. Hughes, a witness for appellee, testified that he had known appellee since the latter part of 1919, and that since he had known him appellee had "never been able to do a good conscientious day's work." There was other testimony of similar import. This was objectionable, and was objected to by appellant, as invading the province of the jury. Compare United States v. Stephens, 9 Cir., 73 F.2d 695, 701.

The trial court overruled each of the above mentioned objections and, in so doing, erred. Whether or not these errors were prejudicial, and whether, if standing alone, they or any of them would necessitate reversal of the judgment, we need not and do not decide. It is assumed that, in the event of another trial, the errors will not be repeated.

Judgment reversed.